[Cite as *State v. Barlow*, 2019-Ohio-582.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    18CA011313 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DUANE BARLOW | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    17CR096247 |

DECISION AND JOURNAL ENTRY

Dated: February 19, 2019

CALLAHAN, Presiding Judge.

{¶1}    Appellant, Duane Barlow, appeals his conviction for domestic violence.  This Court affirms.

I.

{¶2}    On April 13, 2017, Mr. Barlow traveled to the home that he had shared with his estranged wife, R.H., to deliver some money to help support their young children.  While he was on the property, a verbal altercation ensued, then escalated to physical violence.  During the altercation, Mr. Barlow grabbed R.H. by the back of her clothing and threw her from the front seat of his car.  Mr. Barlow pursued R.H. into the house, where the two scuffled in the kitchen.  Mr. Barlow pushed R.H. into a cabinet, causing her to hit her head; R.H. stabbed Mr. Barlow with a knife that she obtained from a kitchen drawer.

{¶3}    Police briefly detained R.H., but she was not charged as a result of the incident.  Mr. Barlow received treatment for his injuries, but was later charged with domestic violence in

violation of R.C. 2919.25(A) and burglary in violation of R.C. 2911.12(A)(1). Mr. Barlow waived his right to be tried by a jury, and the trial court found him guilty of domestic violence, but not guilty of burglary. The trial court sentenced him to six months in the Lorain County Correctional Facility and fined him $1,000, but suspended both the jail term and the fine and placed Mr. Barlow on probation for one year. Mr. Barlow filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTON 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶4} In his first assignment of error, Mr. Barlow argues that his conviction for domestic violence is based on insufficient evidence because Mr. Barlow produced evidence that led to the conclusion that he acted in self-defense.

{¶5} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶6} The due process secured by the Fourteenth Amendment to the United States Constitution guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). Evidence related to an affirmative defense is not implicated by this aspect of due process "because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, citing *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir.1999).

{¶7} Self-defense is an affirmative defense that must be proved by the defendant in a criminal case. *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 36. Consequently, a challenge to the sufficiency of the evidence "is not an appropriate vehicle to review self-defense[.]" *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 39, citing *State v. Geter-Gray*, 9th Dist. Summit No. 25374, 2011-Ohio-1779, ¶ 9. *See also State v. Dunlap*, 9th Dist. Medina No. 17CA0063-M, 2018-Ohio-3525, ¶ 20; *State v. Newsome*, 9th Dist. Lorain No. 17CA011127, 2018-Ohio-1762, ¶ 12; *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 16.

{¶8} Mr. Barlow's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

{¶9} Mr. Barlow's second assignment of error argues that his conviction for domestic violence is against the manifest weight of the evidence. Specifically, he has argued that the

evidence at trial demonstrated that he acted in self-defense and that the testimony of R.H. was not credible. This Court disagrees.

{¶10} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶11} R.C. 2919.25(A), which prohibits domestic violence, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm" includes "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). A "family or household member" includes a spouse who has resided with the defendant. R.C. 2919.25(F)(1)(a)(i).

{¶12} Most of the testimony at trial was provided by R.H. and Mr. Barlow. R.H's son, C.S., also testified during the State's case-in-chief. Both R.H. and Mr. Barlow testified that Mr. Barlow came to R.H.'s residence with the purpose of dropping off some money for the support of their two children and that a fight ensued. The nature and sequence of the events as they unfolded is the point at which their testimony diverged.

{¶13} R.H. testified that Mr. Barlow came to the front door and handed her the money. According to her testimony, she asked where he had been because he had not responded to her recent messages, and Mr. Barlow started shouting in response. R.H. recalled that she stepped out onto the porch where Mr. Barlow stood, then stepped to the walkway. She testified that at that point, Mr. Barlow "swung and pushed" her, knocking her to the ground in the front yard. She recalled that when she rose to her feet again, Mr. Barlow struck her again, "with an open hand and a closed hand." R.H. testified that she ran toward Mr. Barlow's car to safety because it was closer than her house. Mr. Barlow pursued her. She testified that she successfully jumped into the car, but Mr. Barlow reached the vehicle before she was able to close the driver's side door and resumed pulling her hair and striking her.

{¶14} R.H. testified that she grabbed Mr. Barlow's mobile phone from his car so that she could call the police, but Mr. Barlow pursued her up the walkway, into her house, and to the kitchen. Once there, Mr. Barlow "banged [her] head up against the * * * countertop" and "call[ed] [her] an SOB." R.H. testified that, at that point, Mr. Barlow was "[p]hysically on top of [her]," "down, hovering." R.H. testified that Mr. Barlow did not move away and that she stabbed him once with a knife that she had obtained from the kitchen drawer. She recalled that Mr. Barlow fled that house and that her son, who had called 911 at this point, passed the phone to her.

{¶15} R.H.'s teenage son, C.S., testified that he witnessed parts of the altercation. He recalled that he entered the living room while R.H. and Mr. Barlow were arguing at the front door and that he saw when Mr. Barlow "swung her in the yard." C.S. testified that Mr. Barlow punched and choked R.H., but also noted that when she fell to the ground, R.H. was "wrestling" with Mr. Barlow. C.S. testified that he saw her run toward Mr. Barlow's car and get in. C.S.

noted specifically that Mr. Barlow made the first physical contact with R.H. According to his recollection, his mother placed the call to 911.

{¶16} Mr. Barlow offered a slightly different version of the events. He testified that he intended to put money for the children in R.H.'s mailbox, but that she opened the front door when he approached and initiated a verbal confrontation. Mr. Barlow testified that he turned to walk away, but "could feel her behind [him]." When he turned to face her, "she lunged at [him,]" and he, in turn, "grabbed her by the wrist and * * * threw her on the ground." In Mr. Barlow's words, "I didn't attack her first. She attacked me."

{¶17} Mr. Barlow also testified that R.H. then ran toward his car and jumped in, and he acknowledged that he pursued her. Mr. Barlow also described how he removed her from the car: "I literally grabbed her by the back of her belt buckle, grabbed the back of her shirt and threw her out of the car." He agreed that in doing so, he used "a fair amount of force." Noting that R.H., who was on the ground, had both of his mobile phones, Mr. Barlow testified that he "went and tried to wrestle just to get the phones from her." He testified that R.H. ran toward the house and he "ran directly after her." Once in the kitchen, Mr. Barlow pushed R.H. to prevent her from getting a knife from a kitchen drawer. As a result, "[s]he hit the upper cabinet, and then she slumped down in front of the sink." Mr. Barlow testified that R.H. stabbed him when he reached down to take his mobile phone from her grasp. He acknowledged that he was "hovering over her" at the time.

{¶18} A defendant who seeks to establish that he acted in self-defense must demonstrate three elements:

> (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Thomas*, 77 Ohio St.3d 323, 326 (1997), citing *State v. Williford*, 49 Ohio St.3d 247, 249 (1990), quoting *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. These elements are cumulative, so a defendant who fails to prove any one element by a preponderance of evidence fails to demonstrate that he acted in self-defense. *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶19} Mr. Barlow's argument that the weight of the evidence demonstrated that he acted in self-defense fails because regardless of whether he was initially at fault in creating the violent situation that unfolded, he did not establish that his only means of escape from imminent danger of death or great bodily harm was the use of force or that he did not violate a duty to avoid the danger. The testimony at trial—including Mr. Barlow's own statements—established that the altercation between him and R.H. unfolded as a series of events, at least three aspects of which could satisfy the elements of R.C. 2919.25(A). Regardless of whether R.H. lunged at Mr. Barlow or Mr. Barlow swung her to the ground at the outset, Mr. Barlow pursued her to his vehicle. At that point, under no apparent threat of physical harm, Mr. Barlow "grabbed" R.H. and "threw her out of the car" to the ground. By his own testimony, he then tried to "wrestle" his mobile phone away from her. When R.H. fled into her home, Mr. Barlow pursued her into the kitchen, where he pushed her into a kitchen cabinet because he thought she might try to obtain a knife.

{¶20} Based on this testimony, the trier of fact could conclude that rather than facing a threat of imminent bodily harm that could only be escaped by use of force, Mr. Barlow pursued R.H. and repeatedly reengaged in the conflict with her. *Compare State v. Baskerville*, 9th Dist. Summit No. 28148, 2017-Ohio-4050, ¶ 29; *State v. Osborne*, 9th Dist. Summit No. 27563, 2016-

Ohio-282, ¶ 9. As such, this Court cannot say that the weight of the evidence bears in favor of the conclusion that Mr. Barlow acted in self-defense.

{¶21} Mr. Barlow has also argued that his conviction is against the weight of the evidence because R.H.'s testimony lacked credibility. Specifically, Mr. Barlow argues that R.H. did not bear any visible injuries consistent with her testimony that he struck her with an open and closed hand and that her testimony was otherwise not credible. These arguments are not persuasive.

{¶22} "Physical harm," as required by R.C. 2919.25(A), includes "any injury * * * regardless of its gravity or duration." R.C. 2901.01(A)(3). It does not require injury of a magnitude that leaves physical marks on the victim, and physical harm can be established by the victim's testimony. *See State v. Sibole*, 2d Dist. Clark No. 2017-CA-68, 2018-Ohio-3203, ¶ 20, citing *State v. Ward*, 11th Dist. Geauga No. 2008-G-2851, 2009-Ohio-3145, ¶ 28; *State v. Boldin*, 11th Dist. Geauga No. 2007-G-2808, 2007-Ohio-6408, ¶ 40-41. In addition, R.C. 2919.25(A) prohibits both "caus[ing]" and "attempt[ing] to cause physical harm to a family or household member." A violation of R.C. 2919.25(A), therefore, can be proven by evidence demonstrating that the defendant engaged in actions that constitute an *attempt* to inflict physical harm. *See*, *e.g.*, *Sibole* at ¶ 20 (noting that "there is ample evidence that [the defendant] at least attempted to physically harm [the victim] by tackling her and pulling her back into the house by her hair."). Consequently, the fact that R.H. exhibited only one injury that was documented with photographic evidence—an area of redness with a slight indication of broken skin above her right temple—does not undermine her testimony that Mr. Barlow caused or attempted to cause her physical harm.

**{¶23}** Mr. Barlow has also argued that R.H.'s testimony was not credible because she was inconsistent in recalling some details and could not remember other details. He has noted that despite her testimony that he pulled her hair, photographs taken after the incident depict her with tidy hair. Mr. Barlow's own testimony, however, confirms significant details recounted by R.H. and provided additional detail at several salient points.

**{¶24}** This Court must "'consider[] the credibility of witnesses'" as part of our manifest weight review. *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175. Nonetheless, we are mindful of the well-established principle that a trier of fact enjoys the best position to assess the credibility of witnesses. *State v. Rivera*, 9th Dist. Lorain No. 18CA011263, 2019-Ohio-62, ¶ 39, quoting *State v. Johnson*, 9th Dist. Summit No. 25161, 2010-Ohio-3296, ¶ 15. This Court cannot conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. Mr. Barlow's second assignment of error is overruled.

III.

**{¶25}** Mr. Barlow's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.