[Cite as *State v. Thompson*, 2021-Ohio-2166.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | | C.A. No. 20CA011654 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| YULIIA THOMPSON | | ELYRIA MUNICIPAL COURT COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 2019CRB1997 |

DECISION AND JOURNAL ENTRY

Dated: June 28, 2021

TEODOSIO, Judge.

{¶1}   Appellant, Yuliia Thompson, appeals from her conviction for domestic violence in the Elyria Municipal Court.  This Court affirms.

I.

{¶2}   Ms. Thompson and her husband ("M.T.") were involved in a highly contentious divorce case, and the police were called to their house on at least eleven occasions.  According to M.T., Ms. Thompson made numerous false allegations against him, so he bought a GoPro camera in response.  One evening while Ms. Thompson was at work, an incident occurred between M.T. and Ms. Thompson's mother, who was living with the married couple at the time.  According to M.T., he was caring for the couple's nine-month-old child when the mother began to interfere and argue with him about the level of care being provided.  At one point, M.T. locked the door while the mother was outside, preventing her from reentering the home, although the testimony differed as to whether the mother voluntarily stepped outside or was physically ushered outside.  M.T. then

set up his GoPro camera on the mantle above the fireplace, began recording, and resumed caring for his child while remaining in view of the camera.

{¶3} Four minutes later, Ms. Thompson arrived home from work. She proceeded directly toward M.T. and tried to hit him in the head with her hand twice. According to M.T., the first attempt only resulted in a glancing blow, but the second hit stung and hurt his forehead, leaving him with a headache for the remainder of the night. As M.T. hastily retrieved the GoPro from the mantle, Ms. Thompson threw her keys, the baby's milk bottle, and both of her shoes toward him. An hour or so later, M.T. called the police to report the incident. According to the responding officer, M.T. claimed his head hurt and Ms. Thompson admitted that she hit him.

{¶4} Ms. Thompson was arrested and charged with misdemeanor domestic violence and misdemeanor assault. Following a bench trial, the trial court found her guilty of domestic violence, but dismissed the assault charge. The court sentenced Ms. Thompson to ten days in jail, but suspended the sentence on the conditions of good behavior and no further incidents for a period of five years. The court also imposed a $500.00 fine, but suspended $400.00 of it.

{¶5} Ms. Thompson now appeals from her conviction and raises two assignments of error for this Court's review.

## II.

### ASSIGNMENT OF ERROR ONE

THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶6} In her first assignment of error, Ms. Thompson argues that her conviction was not supported by sufficient evidence because the State did not demonstrate that M.T. suffered any physical harm. We disagree.

{¶7} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production * * *" and is, "[i]n essence, * * * a test of adequacy." *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} Ms. Thompson was convicted of domestic violence under R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "family or household member" includes a spouse who is residing with the offender. R.C. 2919.25(F)(1)(a)(i).

{¶9} Ms. Thompson has limited her sufficiency argument to only challenging the State's evidence with respect to the "physical harm" element of domestic violence, so we will limit our

analysis accordingly. Ms. Thompson claims that she did not cause physical harm to M.T. when she "tapped" him on the head. She further claims M.T. testified that he did not inform the responding officer of any injuries he allegedly suffered that night.

{¶10} Upon review of the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, to establish that Ms. Thompson caused or attempted to cause physical harm to her husband. M.T. testified that Ms. Thompson tried to hit him twice when she came home, but he evaded her first attempt somewhat, and she only landed a glancing blow, which did not hurt him. She then swung at him again and hit him on "the forehead, the top front of [his] head with a flat hand." He testified that it stung and hurt, and that he suffered from a headache for the rest of the night. He likened the pain to attempting to stand up while underneath a table and hitting one's head.

{¶11} While Ms. Thompson downplays the severity of M.T.'s alleged injuries, the requisite physical harm for domestic violence may consist of *any injury regardless of its gravity or duration*. *See State v. Cole*, 9th Dist. Summit No. 29362, 2020-Ohio-1589, ¶ 12, citing R.C. 2901.01(A)(3). Physical harm does not require injury of a magnitude that leaves physical marks on the victim and can be established by the victim's testimony. *State v. Barlow*, 9th Dist. Lorain No. 18CA011313, 2019-Ohio-582, ¶ 22. M.T. testified that the second hit stung and hurt him, leaving him with a headache for the rest of the night. His testimony regarding the injuries he suffered was sufficient to satisfy the "physical harm" element of domestic violence. *See id.*

{¶12} Moreover, R.C. 2919.25(A) prohibits both causing and *attempting to cause* physical harm, so it can be proven by evidence demonstrating that the defendant engaged in actions that constitute an attempt to inflict physical harm. *Id.* Here, the evidence showed that Ms. Thompson tried to hit M.T. in the head with her hand twice and succeeded with her second attempt.

Even if the first swing did not connect cleanly with M.T. or result in any injury, knowingly swinging one's hand at someone else's head to hit or slap them may constitute an attempt to inflict physical harm. *See, e.g., State v. Hudson*, 1st Dist. Hamilton No. C-170681, 2019-Ohio-3497, ¶ 9 (determining that taking a swing at someone is enough for a jury to find attempted physical harm to a person); *State v. Buchar*, 5th Dist. Tuscarawas No. 2017AP010003, 2017-Ohio-7601, ¶ 23 (determining that taking a swing at someone may constitute an attempt to cause physical harm to a person, even if the victim moves out of the way); *State v. Belcher*, 2d Dist. Montgomery No. 24968, 2013-Ohio-1234, ¶ 57 (determining that attempting to hit someone by swinging at them three times constitutes an attempt to cause physical harm to a person); *State v. Smith*, 10th Dist. Franklin Nos. 08AP-736 and 09AP-72, 2009-Ohio-2166, ¶ 38 (determining that taking a swing at an officer constitutes attempted physical harm to a person, even when the officer was unsure whether the appellant actually struck him).

{¶13} Ms. Thompson also misstates M.T.'s testimony by arguing that he did not inform the responding officer of any injuries that night. M.T.'s actual testimony was only that he did not *recall* if he told the officer about his injuries. Nevertheless, Officer Brandon Mundell, who was the responding officer that night, testified that he recalled M.T. saying that his head hurt, even though had no visible injuries.

{¶14} Accordingly, upon review of the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, that Ms. Thompson caused or attempted to cause physical harm to M.T., and any rational trier of fact could have found this element of the domestic violence proven beyond a reasonable doubt. *See Jenks* at paragraph two of the syllabus.

{¶15} Ms. Thompson's first assignment of error is overruled.

**ASSIGNMENT OF ERROR TWO**

THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.

**{¶16}** In her second assignment of error, Ms. Thompson argues that her conviction is against the manifest weight of the evidence. We disagree.

**{¶17}** A challenge to the manifest weight of the evidence concerns the State's burden of persuasion. *State v. Klafczynski*, 9th Dist. Medina No. 18CA0084-M, 2020-Ohio-3221, ¶ 7. This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶18}** Ms. Thompson specifically limits her manifest weight argument to challenging M.T.'s credibility by claiming that he testified untruthfully about being physically harmed. She argues that M.T. antagonized her that night and purposely recorded the incident because he had an incentive to get her deported, e.g., the pending custody dispute. She also contends that having a

headache is inconsistent with M.T.'s actions following the alleged incident. For example, she directs us to the evidence that M.T. ran over to the GoPro camera to preserve the video evidence instead of caring for his son, sat through and ate the dinner she prepared for the family, instructed her to pump breast milk believing she would soon be incarcerated, and did not tell the responding officer that he was injured.

{¶19} "[M]atters of credibility are primarily for the trier of fact" because the trier of fact "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. Ms. Thompson has limited her argument here to challenging M.T.'s credibility with regard to his alleged injuries. Yet, our review of the record reveals that the trial court, as trier of fact, did not find M.T.'s testimony regarding his injuries to be credible. The judge was well aware of the dysfunctional relationship between the parties, as he had to repeatedly reel them back in during trial to re-focus everyone on the criminal charges at hand, instead of allowing them to stray into issues more appropriately reserved for the couple's divorce case. In ultimately announcing his verdict in this matter, the judge stated that he found no evidence of injury to M.T. despite the testimony elicited at trial:

> *There's no evidence of injury to [M.T.]* He claims he had a headache that night. He claimed he had a headache that night to the police officer and restated that he had a headache today in his testimony.

(Emphasis added.). While then rebuking both Ms. Thompson and M.T. for their incessant, childish behavior toward each other, the judge further noted that no one was actually injured in this matter:

> Videotapes. Come on. That's a setup. That's - - I did divorce law for 33 years. That's preparing for a divorce. And what happens? Somebody finally reaches a breaking point, takes an aggressive action, albeit not a violent - - *not violent in the sense that anybody left there hurt*, but aggressive action. And it's a setup. You both were trying to get something on the other person.

(Emphasis added.).

{¶20} Instead, the trial court found Ms. Thompson guilty not because she actually caused any physical harm to M.T., but because she *attempted* to cause physical harm to him. Once again, R.C. 2919.25(A) prohibits both causing and attempting to cause physical harm and can thus be proven by evidence demonstrating that the defendant engaged in actions that constitute an attempt to inflict physical harm. *See Barlow*, 2019-Ohio-582, at ¶ 22. *See also State v. Blonski*, 125 Ohio App.3d 103, 114 (9th Dist.1997) ("A defendant may be found guilty of domestic violence even if the victim * * * sustains no injury at all."). In announcing the verdict, the judge concluded that he had "no choice" but to find Ms. Thompson guilty because the domestic violence statute provides for a "simple aggressive act without injury":

> The video is clear. [M.T.] was sitting at the table feeding the baby. The defendant came into the house and quickly made her way to [M.T.] and struck him two times on the head. This action was followed by the throwing of keys, a baby bottle, and shoes.
>
> There's no evidence of injury to [M.T.] He claims he had a headache that night. He claimed he had a headache that night to the police officer and restated that he had a headache today in his testimony.
>
> A reading of 2919.25 does not state the level of physical harm. In fact, it states, "Attempt to cause physical harm." Does hitting someone in the head with an open hand constitute harm or attempt to cause harm? Must there be bruises, red marks or blood to establish a case of domestic violence? Can just an aggressive act without injury constitute domestic violence?
>
> A lot of what I heard today is irrelevant to the criminal charge, but there's certainly a lot of material testimony here for contested divorce custody. The purpose of 2919.25 is to prevent violence in our families. A simple aggressive act without injury is contemplated by this law.
>
> Here there were two slaps to [M.T.'s] head, throwing of shoes, throwing of keys and a baby bottle at least in his direction. Whether it was at him to hit him or not, it was in his direction.

9

I have no choice but to find Ms. Thompson guilty of the charge of domestic violence, misdemeanor one. The assault charge is dismissed as it's merged in with the domestic violence.

{¶21} Again, Ms. Thompson has only argued that her conviction was against the manifest weight of the evidence because M.T.'s testimony was not credible as to his alleged injuries. She has not argued that the trial court lost its way and created a manifest miscarriage of justice in convicting her of domestic violence based on her *attempt* to cause M.T. physical harm. It is not the duty of this Court to create and develop such an argument on her behalf. *See State v. Baker*, 9th Dist. Summit No. 29167, 2020-Ohio-19, ¶ 18; *State v. Grad*, 9th Dist. Medina No. 15CA0014-M, 2016-Ohio-8388, ¶ 15. Accordingly, based on the limited argument set forth in her appellate brief, we conclude that Ms. Thompson's conviction for domestic violence was not against the manifest weight of the evidence.

{¶22} Ms. Thompson's second assignment of error is overruled.

III.

{¶23} Ms. Thompson's first and second assignments of error are both overruled. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

SUTTON, J.
CONCURS IN JUDGMENT ONLY.

CARR, P. J.
CONCURRING.

{¶24} I reluctantly concur as this Court is compelled to affirm the trial court's judgment. As noted by the majority, the domestic violence statute only requires an attempt to cause physical harm. *See* R.C. 2919.25(A). However, I share the same concerns expressed by the trial court.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

CYNTHIA M. ADAMS, Prosecuting Attorney, for Appellee.